IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> HECTOR LUIS RIVERA-LIND, <br><br> Defendant. | CRIMINAL No. 17-067 (GAG) |

**DEFENDANT'S OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM**

TO THE HONORABLE GUSTAVO A. GELPI
UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF PUERTO RICO

**I. Introduction**

Mr. Rivera-Lind has been convicted of money laundering charges stemming from a transaction in which he transported money and delivered it to an undercover agent. Mr. Rivera-Lind formally[1] objects to the Pre-sentence Investigation Report's ("PSR") inclusion of a six-level enhancement under USSG § 2S1.1(b)(1). Said enhancement applies if the government proves to the Court by a preponderance of the evidence that the defendant knew or believed the money laundered was the proceeds of illegal narcotics trafficking. In this case, the government conceded as part of the negotiations in the plea agreement, that it was unable to meet said burden. Accordingly, the enhancement was left out of the agreement. In any event, the evidence in this case as narrated both in the PSR and in the

---

[1] The defendant submitted his informal objections to the probation officer as required by the Local Rules of this Court. As of the filing of this pleading, we do not have the position of the probation officer either via Amended PSR or Addendum.

version of facts of the plea agreement is independently insufficient to support the enhancement. We ask the Court not to apply the enhancement and to order that it be eliminated from the guideline calculation in the PSR.

Additionally, the present sentencing memorandum includes a discussion of the relevant section 3553(a) factors as they apply to Mr. Rivera-Lind. The discussion is intended to persuade the Court that the parties' agreement is reasonable and should be followed. The defendant has demonstrated an amazing potential for full and complete rehabilitation. His history and characteristics as well as the other factors show that a harsh sentence of incarceration is unnecessary and that he currently presents a very low likelihood of recidivism. A sentence at the lower end of the guideline range dictated by an offense level 15 and a Criminal History Category of IV should be imposed.

**II. Factual and Procedural Background**

The PSR in this case includes a narration of the facts that comprise the offense conduct from both the official law enforcement reports and the government's version of facts in the plea agreement. It is essentially the same. Distilled to is essence, the investigation in this case began when a confidential source informed HSI agents that a member of a money laundering/drug trafficking organization (not Mr. Rivera-Lind), was seeking assistance to launder approximately $120,000. Agents provided the confidential source a telephone number that would be used by an undercover agent. The confidential source was to provide this number to the member of the organization to coordinate the financial transaction. The undercover agent was then to receive a call with a code phrase "Para Pipo de Kolla."

On March 17, 2014, the undercover agent called the number provided. The recipient of the call, later identified as Mr. Rivera-Lind, made arrangements to meet the following

2

day so that he could deliver the money. On March 18, 2014, arrangements were made to meet at the Home Depot store at the Montehiedra Town Center. Mr. Rivera-Lind arrived in a white Suzuki Vitara accompanied by his wife. Mr. Rivera-Lind greeted the undercover agent and subsequently placed a black backpack inside the agent's vehicle. Mr. Rivera-Lind informed that the money was packaged in "tens." Mr. Rivera-Lind then departed the area. He and his wife were identified in a subterfuge traffic stop conducted subsequently. However, Mr. Rivera-Lind was not arrested. Inside the black backpack, the HSI agents recovered $120,000 in bundles of $10,000.

Mr. Rivera-Lind was arrested on October 3, 2016, that is, more than two and a half years after the transaction. At the bail hearing, the magistrate judge released Mr. Rivera-Lind to the halfway house (where he was at the time of the arrest since he was about to complete a sentence imposed on revocation). Since there was no bed available for the defendant at the halfway house, the magistrate judge subsequently granted a motion by the defense to allow Mr. Rivera-Lind to be released on home detention and electronic monitoring. Mr. Rivera-Lind was released on December 1, 2016. On April 3, 2017, the electronic monitoring condition was eliminated given his excellent compliance and his need to have the flexibility to work his two jobs. Mr. Rivera-Lind pled guilty to an Information on February 8, 2017 pursuant to a plea agreement. (Docket Nos. 1, 2, 4, and 6.)

**III. Applicable Law and Discussion**

The PSR in the present case has calculated the advisory guidelines as follows: a base offense level of 16 under USSG § 2S1.1(a)(2), that is, eight(8) plus eight (8) since the funds laundered were more than $95,000 but less than $150,000 under USSG § 2B1.1(b)(1)(E); a six-level increase under USSG § 2S1.1(b)(1)(A)(B)(i) since the defendant allegedly knew or believed funds were the proceeds of controlled substances trafficking; a two-level

decrease because the defendant was convicted of 18 U.S.C. § 1956; and a three-level decrease for acceptance of responsibility under USSG §§ 3E1.1(a) and (b). The total adjusted offense level is 21 according to the PSR.

The PSR calculated 11 criminal history points resulting in a Criminal History Category ("CHC") of V. An offense level of 21 and a CHC of V yields an imprisonment range of 70 to 87 months. However, the PSR recommends a departure for over representation of criminal history to a CHC of IV. An offense level of 21 and a CHC of IV suggests a range of 57 to 71 months.

Notwithstanding, Mr. Rivera-Lind objects to the six-level enhancement for knowledge or belief that the funds were drug proceeds. If the objection is deemed well-taken, then the offense level becomes 15 and with a CHC of IV, the range will be 30 to 37 months.

**A. The Six-Level Enhancement**

The enhancement under USSG § 2S1.1(b)(1)(A)(B)(i) applies if: "(A) Subsection (a)(2) applies; and (B) the defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote (i) an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical[.]" So the question for the Court to decide is whether the government can prove at sentencing by a preponderance of the evidence that Mr. Rivera-Lind knew or believed the money he transported and delivered to the undercover agent was the proceeds of illegal drug distribution. Counsel for the government, AUSA Zander, has been candid and gracious enough to inform both the undersigned and the probation officer that in his view the evidence and the facts do not support the enhancement. That is why he agreed in the plea

4

agreement not to include it. This is not a case where the government negotiates out of the plea agreement a clearly applicable sentencing enhancement. In any event, the evidence on the record is insufficient on its own to support the enhancement.

To be sure, a conviction for money laundering does not require that the defendant know or believe that the laundered funds are drug proceeds. The statute only requires that the funds are in fact the proceeds of a specified unlawful activity and that the defendant knows that they are the proceeds of "some form of unlawful activity." *United States v. Cornier-Ortiz*, 361 F.3d 29, 37 (1st Cir. 2004); *see also United States v. Rivera-Rodriguez*, 318 F.3d 268, 271 (1st Cir. 2003)("The defendant is not required to know what type of felony spawned the proceeds but only that some felony did so.") In other words, a defendant can be guilty of money laundering under 18 U.S.C. § 1956 when he only knows that the money laundered is money from an unlawful activity, even when he does not know what type of unlawful activity. Therefore, the fact that he has pleaded guilty in this case, and that the Indictment alleges that the money was the proceeds of drug trafficking does not in itself demonstrate the level of knowledge required for the enhancement at issue to apply. *See United States v. Caceres-Cabrera*, 219 Fed. Appx. 18, 19 (1st Cir. 2007)("The defendant correctly points out that it is not an element of the offense of conviction that the defendant know that the laundered monies are proceeds of illicit drug transactions.")

On the other hand, the Court could still find the enhancement under the guidelines to be applicable if additional facts tend to show that the defendant knew or believed the money he delivered to the undercover agent are illegal narcotics proceeds. However, the undisputed facts of this case as narrated in both the PSR and the plea agreement do not so show. The evidence simply shows that Mr. Rivera-Lind made arrangements with an

5

undercover agent to meet at a place certain and delivered a backpack that contained $120,000. There is no evidence that he is the person that spoke to the confidential source. There is no evidence of who delivered the money to Mr. Rivera-Lind. There is no evidence of what discussions were had with the person that gave him the backpack. There is no evidence that he knew who the owner of the funds was or where the money came from.

We are not blind to the fact that anyone that looks at these facts can suspect that there is a strong likelihood that the money involved in this transaction is drug money. Although one could in an academic setting come up with a number of examples of unlawful activities that these money can be the proceeds of—such as Hobbs Act robbery, extortion, illegal gambling, fraud, etcetera,—it is probable that this money was drug money. But a suspicion does not make it to the level of knowledge or belief. And in a case like this where the government is not advocating for the enhancement, the same should not be applied. Simply put, what happened in this case was that Mr. Rivera-Lind was recruited to transport a bag full of money from point A to point B and deliver it to someone who turned out to be a law enforcement agent.

A survey of cases where the application of the enhancement has been upheld on appeal demonstrates that more is needed. For instance, in *United States v. George*, 761 F.3d 42, 60 (1st Cir. 2014), at sentencing "prosecutors played a recording of Dardinski telling George that he had to 'hide' some 'coke' money and another recording of George telling Dardinski that Hansen had agreed to clean 'the rest,' with 'the rest' being an apparent allusion to the drug money." Likewise, in *United States v. Acosta-Roman*, 549 F.3d 1, 3-4 (1st Cir. 2008), the government presented at sentencing the testimony of two undercover DEA agents "who participated in the investigation that led to Acosta's arrest. They testified about the money laundering operations and the circumstances that

6

implicated Acosta. In particular, the agents testified about Acosta's involvement, with his wife, in delivering large amounts of cash on three occasions." The defendant also testified at the hearing, but his version was not found to be credible.

In *United States v. Miliano*, 480 F.3d 605, 607 (1st Cir. 2007), the district court found the enhancement applicable. "The court rested this finding primarily on 'the amounts [Miliano] was paid for the pick ups, the bag that was used in the pick ups, the place where the pick ups took place, [and] the modus operandi of drug payments in Puerto Rico.'" An agent testified in *Miliano* and video recordings of the transactions were introduced at the sentencing hearing.

Similarly, in *United States v. Torres-Velazquez*, 480 F.3d 100, 103 (1st Cir. 2007), and reviewing for plain error, the appellate court affirmed the application of the enhancement. The First Circuit explained the nature of the evidence in the record to support the Court's finding as follows:

> The district court noted that the evidence showed that the procedures followed by Torres and his co-defendants were typical of the modus operandi of drug organizations operating in Puerto Rico. In addition, the court found that Torres had 'prior knowledge of the drug business' because he had two previous drug convictions, for conspiracy to distribute controlled substances and possession with intent to distribute controlled substances. Finally, the court was persuaded that the large quantity of cash involved in the scheme further indicated that Torres knew the funds were related to the drug trade.

*Id.*

On the other hand, in *Caceres-Cabrera*, 219 Fed. Appx. 18, the First Circuit remanded for re-sentencing. The Court could not determine whether the finding of the district court to apply the enhancement rested on an error of law, or whether the Court had

7

found the evidence to be sufficient. However, the district court had "expressed, several times, considerable doubt that the evidence was enough to meet the government's burden of proving that the laundered monies were drug proceeds." *Id*. at 19. Like in this case, *Caceres-Cabrera* involved an individual recruited to transport a bag of money from point A to point B and to deliver it to an undercover agent using a code word. On remand, the Honorable Judge Jose A. Fuste did not apply the enhancement. *See* Criminal No. 05-170 (JAF). We are familiar with this case because we litigated it.

The case of Mr. Rivera-Lind is a lot like *Caceres-Cabrera* and very little like *George*, *Acosta-Roman*, *Miliano* and *Torres-Velazquez*. We therefore ask the court to sustain our objection to the PSR and to calculate the guidelines accordingly without the six-level enhancement for knowledge or belief that the money laundered is drug proceeds.

**B. Section 3553(a) Factors**

***1. History and Characteristics of the Defendant***

Mr. Rivera-Lind is currently 43 years old. And he is tired. He is tired on being in prison; he is tired of being away from his family. A while ago he made the decision to change his life. Yet, his criminal past continues to catch up with him. At a point in his life when things were looking up as he was about to be released from the halfway house, he gets arrested once again for something that he did more than three (3) years ago. At the time of his arrest for this case, Mr. Rivera-Lind was gainfully employed and was looking forward to being released to supervision because he wanted an opportunity to show that he was serious and committed about the decision to change his life.

Fortunately, although he was detained for over two months after the magistrate judge had ordered his release, Mr. Rivera-Lind eventually received the opportunity he

8

wanted. On December 1, 2016, he was released from MDC Guaynabo and he has been doing excellently while on conditions of release. Mr. Rivera-Lind has two jobs, one during the day in a mechanic/tire shop and another one at night as parking lot attendant in a night club. His excellent performance while on supervision earned him the opportunity to be off of electronic monitoring. And he has continued to comply well with all of his conditions. His excellent compliance is a good preview for the Court to know that Mr. Rivera-Lind is serious when he says he is done with a life of crime.

Mr. Rivera-Lind grew up in a low to middle class household. Stability was never something that the he enjoyed as both his parents separated when he was a child and they both remarried twice. He also felt neglected as his parents were always either working or emotionally unavailable. Mr. Rivera-Lind witnessed domestic violence. And at a very young age, he had to assume the responsibility of watching over and taking care of his siblings. He himself was a child, 16 years old, when he had to abandon school because his girlfriend was pregnant.

A traumatic event that marked the life of Mr. Rivera-Lind was the fact that his half-brother Cecilio was murdered at the age of 18. The murder was related to a dispute over drug points at Manuel A. Perez housing project and Mr. Rivera-Lind felt guilty and responsible for the death of his brother as he was "in charge" of his siblings. He laments that he could have done more to keep his little brother off the streets. It is this traumatic event that caused Mr. Rivera-Lind to rebel and to turn to the streets. He lost his job as hospital escort. This event gave rise to the beginning of the conduct that comprises his extensive criminal history.

Mr. Rivera-Lind has six children from different relationships. Except for his son Norgie who was charged in Orlando for drug possession, all of Mr. Rivera-Lind's children

9

have become well-rounded individuals. Young men and women that have pursued studies and are employed. Mr. Rivera-Lind surmises that the reason the kids have turned out Ok is because he has cited himself as example. He speaks to his children about the importance of making the right decision and the consequences of making bad ones.

Further, Mr. Rivera-Lind resides in a modest residence. He is described by his current consensual partner of 16 years as a great person, husband and son; as someone that is always willing to assist anyone in need. Ms. Torres, his partner, is saddened that after she had seen Mr. Rivera-Lind truly committed to live a law-abiding life, his past is still catching up with him.

Even though Mr. Rivera-Lind has had many brushes with the law, he has always being a hard-working individual. As a young adult he worked as a hospital orderly. He lost this job after the death of his brother. He has worked on his own with an auto detailing business. He also worked for two years at an auto detailing business called La R auto detailing. In recent times, after his release from prison, he held two jobs: perfect cleaning and Wendys's from April to June of 2015. He is currently working since June of 2016 at Eschuvi Tire Center at the Shell Gas Station in Ponce de Leon avenue. His employer Joaquin Mauro describes Mr. Rivera-Lind as a dependable and hard working employee. This job is available to Mr. Rivera-Lind even if it has to be interrupted by a term of imprisonment in this case.

We would also like to comment on the fact that even though Mr. Rivera-Lind has a significant history of controlled substance abuse, while on supervision he has been able to remain drug free. He has tested negative on over 15 drug tests administered since he was released on conditions.

Lastly, a brief comment on Mr. Rivera-Lind's character anent his conduct in this case. He accepted responsibility very early in the proceedings. After the first status conference, but before the second, he had already announced his intention to plead guilty. (*See* Criminal No. 16-518 (GAG), Docket No. 20.) Moreover, there was a mistake in the Indictment regarding the date of the offense. Mr. Rivera-Lind agreed to waive Indictment and plead guilty to an information. Subsequently, in his PSR interview, he admitted his responsibility in full, and showed genuine repentance. Specifically, he admitted that he engaged in the offense due to financial difficulties. He also expressed to the probation officer that he is experiencing anxiety and depression related the course his life has taken and his current legal predicament. He has also experienced suicidal ideation. Despite these issues, he accepted responsibility in a complete and timely manner which is something that speaks volumes as to his character.

### *2. Nature and Circumstances of the Offense*

As previously stated, Mr. Rivera-Lind's offense in this particular occasion is limited to one financial transaction, that is, transportation and delivery of money to be laundered. He stood to earn a fee for his participation, but he was not the owner of the money, nor a major participant in the organization. The offense is non-violent. And he himself has no history of violence. Serious as the offense is, because without money laundering there would not be the specified unlawful activities, it is not as serious as say drug trafficking itself or crimes of violence.

### *3. Respect for the Law, Just Punishment, and Deterrence*

These factors are the ones that most prominently point to a sentence of imprisonment severe enough to address the defendant's recidivism. After all, Mr. Rivera-Lind has an extensive criminal record. We would only argue that when balanced against

11

the history and characteristics of the defendant and the nature and circumstances of the offense, these factor lose force. The fact of the matter is that despite his criminal past, Mr. Rivera-Lind seems committed to leave all that behind. His excellent compliance while on bail is a good indicator that the likelihood of recidivism is low. Also, as the Court knows, studies show that as defendants get older, the risk of recidivism also decreases. A sentence as agreed by the parties in this case is sufficient and not greater than necessary.

### *4. Protection of the Public*

Since the offense is non-violent, and he has not shown a proclivity toward violence, a sentence of incarceration for Mr. Rivera-Lind does not need to be unduly harsh to incapacitate him in order to protect the public. Money laundering is only a public safety risk as an indirect extension of the violence that drug trafficking generates and to the extent it promotes such offense.

### *5. Sentencing Options under the Guidelines*

The guidelines suggest a sentence of incarceration. But the offense qualifies for probation by statute. Also, supervised release is a penalty applicable to this case after release from confinement. The Court can also consider alternatives to incarceration such as home detention and electronic monitoring. Community service is also a penalty that the Court can impose as part of the supervised release term. Mr. Rivera-Lind has no objections to the conditions of supervised release that have been recommended in the PSR.

### *6. Medical Treatment, Vocational Training, Education*

Mr. Rivera-Lind is generally healthy. However, he abandoned school and is interested in vocational training as expressed in paragraph 67 of the PSR. He does need mental health treatment to address his current anxiety, depression and suicidal ideation.

These services are available to him through the probation office more effectively than through the Bureau of Prisons.

### *7. Restitution*

Restitution is not applicable to this case. *See* 18 U.S.C. § 3663.

### IV. Conclusion

In view of all of the above, it is respectfully requested that the six-level enhancement calculated in the PSR not be applied and that the Court sentence the defendant in accordance to the terms of the plea agreement. The position of Mr. Rivera-Lind is that the appropriate guidelines calculation in this case is a total offense level of 15 and a CHC of IV.

**WHEREFORE**, it is respectfully requested that this Honorable Court take notice of the above and that the defendant be sentenced as requested herein.

**I HEREBY CERTIFY** that on this date I electronically filed the present motion with the Clerk of Court using the CM/ECF system which will be send electronic notification of the same to all parties of record.

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, this 26th day of May, 2017.

**ERIC ALEXANDER VOS**
**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF PUERTO RICO**

**S/Hector L. Ramos-Vega**
Hector L. Ramos-Vega
First Assistant Federal Public Defender
USDC-PR 222504
241 F.D. Roosevelt Ave.
Hato Rey, P.R. 00918-2441
(787) 281-4922/ Fax (787) 281-4899
E-mail: Hector_Ramos@fd.org